*In re* ESTATE OF JOEL F. KIRK, Deceased (Cheryl A. Kirk O'Connor, Indiv. and as Guardian of the Estate and Person of Joel F. Kirk II, a Minor, *et al.*, Petitioners-Appellants v. Harris Bank Barrington, N.A., Respondent-Appellee).

Second District   No. 2—92—0971

Opinion filed March 17, 1993.—Rehearing denied April 12, 1993.

70

Bruce G. Wilkins, of O'Brien, Hanrahan, Wojcik & Fay, of Woodstock, for appellants.

Paul T. Lahti, of Lahti & Cole, of Crystal Lake, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Cheryl A. Kirk O'Connor, individually and as guardian of the estate and person of Joel F. Kirk II, minor, Lynda M. Kirk Jones, Lisa A. Kirk Staver, and Debra Lee Kirk Madenis, petitioners, appeal from an order denying their petition to remove the Harris Bank Barrington, respondent, as executor of the estate of Joel F. Kirk. For the following reasons, we affirm.

Joel F. Kirk died on July 19, 1989, in Sioux City, Iowa, in the performance of his duties during the crash landing of United Air Lines Flight 232. Kirk was survived by his daughters, Cheryl A. Kirk O'Connor, Lisa A. Kirk Staver, and Lynda M. Kirk Jones, and two children who were minors at the time of their father's death, Debra L. Kirk Madenis and Joel F. Kirk II. O'Connor was appointed guardian of the estate and person of the minor children.

Decedent's will, dated December 21, 1979, nominated the First National Bank and Trust Company of Barrington, Illinois, and Janet L. Kirk as executors. The bank was nominated as guardian of the estate of any minor child. Janet L. Kirk and decedent were married and divorced on two separate occasions. Their second marriage was dissolved on July 13, 1988.

On September 11, 1989, the Harris Bank Barrington, formerly known as the First National Bank and Trust Company of Barrington, Illinois, filed a petition for probate of will and for letters testamentary. On September 26, 1989, the court admitted Kirk's will, dated

December 21, 1979, to probate and appointed the Harris Bank Barrington as executor of the estate of Joel F. Kirk.

On September 10, 1990, petitioners filed a petition for removal of the Harris Bank Barrington as executor of the estate of Joel F. Kirk. Thereafter, the court issued a citation ordering the Harris Bank Barrington to show cause why it should not be removed as executor of the estate of Joel F. Kirk. On July 24, 1992, the court entered an order granting the executor's motion for a "directed verdict [*sic*]" on the basis that petitioners failed to sustain their burden of proving the executor should be removed. The petition for removal was denied and petitioners appealed.

■ Petitioners first contend that the trial court erred by finding that the executor denied all allegations contained in the petition to remove. The executor responded to each paragraph by denying "any and all allegations of wrong doing, ill-will, or breach of duty." Petitioners contend that this format was too general as section 2—610(a) of the Code of Civil Procedure requires an explicit denial of each allegation of fact contained in the pleading to which it relates. Ill. Rev. Stat. 1989, ch. 110, par. 2—610(a).

We find petitioners' contention meritless. Supreme Court Rule 136 allows a pleader to deny all the allegations in a paragraph "without paraphrasing or separately describing each allegation denied." (134 Ill. 2d R. 136(a).) We have reviewed the executor's response and find it in compliance with Supreme Court Rule 136(a). Furthermore, the petitioners did not file any motions in the trial court attacking the executor's response. Issues not raised in the trial court are deemed waived and cannot be argued for the first time on appeal. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279.) Therefore, we deem the issue waived.

■ Next, petitioners contend that the trial court failed to follow proper procedure at the hearing on the petition to remove the executor. At the hearing on the petition for removal, petitioners were required to present evidence in support of their petition for removal. At the close of petitioners' evidence, the court stated that it was granting the executor's motion for a "directed verdict [*sic*]," based on a finding that petitioners failed to sustain their burden of providing evidence establishing reasonable grounds for removal. Thus, the petition to remove the executor was denied.

We note that the trial court stated that it was granting the executor's motion for a "directed verdict [*sic*]." Since the hearing was before a judge and not a jury, the executor's motion is properly termed a motion for a directed finding, or a motion for judgment at the close

of plaintiff's case. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110.) The trial court should apply a two-step analysis in ruling on this type of motion. First, the trial court determines whether the plaintiff has presented a *prima facie* case by presenting at least some evidence essential to each element of the cause asserted. (*Zannini v. Reliance Insurance Co. of Illinois, Inc.* (1992), 147 Ill. 2d 437, 449; *Wehde v. Regional Transportation Authority* (1992), 237 Ill. App. 3d 664, 675.) If so, the court must weigh the evidence, pass on the credibility of the witnesses, draw reasonable inferences and generally consider the weight and quality of the evidence. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110; *Wujcik v. Gallagher & Henry Contractors* (1992), 232 Ill. App. 3d 323, 328.) If the plaintiff has not presented a *prima facie* case, the trial court should grant the motion and enter judgment in the defendant's favor. (*Zannini*, 147 Ill. 2d at 449.) The trial court's decision to direct a judgment will not be reversed on appeal unless it is against the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.

Petitioners contend that the procedure followed by the trial court was incorrect because it required petitioners to present a *prima facie* case for removal by providing evidence establishing reasonable grounds for removal. According to section 23—3 of the Probate Act of 1975, proceedings to remove an executor are commenced when the court issues a citation directing the representative to show cause why he should not be removed from office. (Ill. Rev. Stat. 1989, ch. 110½, par. 23—3(a).) Contrary to petitioners' contention, the issuance of a citation does not place the burden of proving fitness to retain office on the executor. Rather, the challenged representative must answer the citation by admitting or denying the allegations in support of removal. If the representative admits the allegations, and the admissions establish a *prima facie* showing of removal based on reasonable grounds for removal, the representative bears the burden of proving fitness to retain office. If the representative denies the allegations of the citation, as the executor did in this case, the court commences proceedings on the petition for removal by conducting an evidentiary hearing. (See *In re Estate of Glenos* (1964), 50 Ill. App. 2d 89, 95.) At the hearing, petitioners bear the burden of providing a *prima facie* case for removal by introducing evidence establishing reasonable grounds for removal. If the petitioners sustain their burden, the burden then shifts to the executor to prove his fitness to retain office. *In re Estate of Lucas* (1978), 71 Ill. 2d 277, 282.

In this case, the executor was not required to prove its fitness to retain office. The trial court granted the executor's motion for a di-

rected finding on the basis that petitioners failed to present evidence establishing reasonable grounds for removal. We find the procedure followed by the trial court was consistent with that required by *Estate of Lucas*, the most recent supreme court case discussing this issue.

■ Next, petitioners claim that the court erred in failing to remove the executor. Section 23—2 of the Probate Act specifies the following grounds by which the court may remove a representative:

"If the representative:

(1) is acting under letters secured by false pretenses;

(2) is adjudged a person subject to involuntary admission under the Mental Health and Developmental Disabilities Code or is adjudged a disabled person;

(3) is convicted of a felony;

(4) wastes or mismanages the estate;

(5) conducts himself in such a manner as to endanger his co-representative or the surety on his bond;

(6) fails to give sufficient bond or security, counter security or a new bond, after being ordered by the court to do so;

(7) fails to file an inventory or accounting after being ordered by the court to do so;

(8) conceals himself so that process cannot be served upon him or notice cannot be given to him;

(9) becomes incapable of or unsuitable for the discharge of his duties; or

(10) there is other good cause." (Ill. Rev. Stat. 1989, ch. 110½, par. 23—2(a).)

The trial court's decision to remove an executor will not be disturbed on review unless it is against the manifest weight of the evidence. (*In re Estate of Debevec* (1990), 195 Ill. App. 3d 891, 897.) Petitioners contend that the executor should have been removed because it failed to properly discharge its duties and wasted or mismanaged the estate. Petitioners assert that the executor's actions and attitude toward the petitioners indicate thoughtlessness and hostility. We will address each of petitioners' assertions in turn.

### GUARDIANSHIP OF DECEDENT'S MINOR CHILDREN

■ Petitioners assert that the executor should be removed for attempting to remove Cheryl O'Connor as guardian of the estates of Joel F. Kirk II and Debra L. Kirk, minor children of the decedent. Decedent's will nominated the First National Bank and Trust Company of Barrington, now known as the Harris Bank Barrington, as guardian of the estate of his minor children. The petitioners' brief devotes

10 pages to a discussion of the rights to custody and guardianship of Janet Layoff, the decedent's former wife. However, the executor was not seeking custody of the minor children. The executor only sought guardianship of the estate of the minor children, as provided by decedent's will. Our review of the record reveals that the petitioners failed to present sufficient evidence indicating how or why seeking guardianship pursuant to the testator's declared intent constitutes cause for removal.

■ Petitioners also claim that the executor did not act in good faith by using the same attorney in its petition to be appointed guardian of the estate of the minor children and as executor of the decedent's will. An attorney may not undertake employment which constitutes a conflict of interest, no matter how honest his motives or intentions might be. (*In re La Pinska* (1978), 72 Ill. 2d 461, 469.) However, the conduct of the attorney is not at issue. The sole issue concerns the conduct of the executor. Contrary to petitioners' contention, the Harris Bank may act as both executor of decedent's will and as guardian of the estate of the minor children. (See *Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502 (the bank and two sisters of decedent served as co-executors and cotrustees of decedent's will and trust).) We determine that petitioners failed to present sufficient evidence indicating that the executor was not acting in the best interests of the estate by petitioning for guardianship of the estate of the minor children pursuant to the nomination in the will.

### UNITED STATES SAVINGS BONDS

■ Next, petitioners claim that the executor mismanaged the estate by the manner in which it distributed United States Savings Bonds belonging to decedent. The executor collected 37 savings bonds, copied them, and mailed them to Lynda Jones, the successor titleholder designated on the face of the bonds, who apparently received them approximately two weeks later. Petitioners cite no authority indicating that the executor's actions constituted mismanagement. Our review of the record reveals that no harm resulted by handling the estate in this manner. Thus, petitioners failed to sustain their burden of establishing reasonable grounds for removal.

### SALE OF PERSONAL PROPERTY

■ Petitioners contend that the executor mismanaged the estate by selling personal property. The executor sold a tractor and equipment for $3,500 with permission of the petitioners. Although petition-

ers fail to state how the executor's actions caused harm, they contend that the executor should be removed for failing to advise them of their rights to this property as beneficiaries under decedent's will.

An executor has a fiduciary duty to advise persons of their rights as beneficiaries. (*In re Estate of Nuyen* (1982), 111 Ill. App. 3d 216, 223.) Decedent's will specifically devised "personal and household effects not otherwise effectively disposed of, such as jewelry, clothing, automobiles, furniture, furnishings, silver, books and pictures, including policies of insurance" to his children that survived him for 30 days following his death. Assuming *arguendo* petitioners were entitled to the farm equipment under the terms of the will, there is no evidence in the record that the executor breached his fiduciary duty and caused harm to the estate, since the sale was made with petitioners' consent and no harm has been alleged or proved.

## INVENTORY

■ Petitioners also object to the inventory filed by the executor. The executor designated property in decedent's home as property of the estate. Petitioners object on the basis that the property belonged to one of the five persons living in the home and should not have been included as property of the estate.

Section 14—1 of the Probate Act requires the representative of the estate to file a verified inventory of the real and personal property comprising the estate within 60 days of the issuance of the letters of office. (Ill. Rev. Stat. 1989, ch. 110½, par. 14—1.) Once an asset has been inventoried in an estate, a party claiming title to or an interest in an asset preserves his interest by filing a claim within the statutory period. (Ill. Rev. Stat. 1989, ch. 110½, par. 18—1; *Ilg v. Continental Illinois National Bank & Trust Co.* (1968), 94 Ill. App. 2d 143, 150.) Petitioners contend that they objected to the inventory because it contained horses, a dirt bike, and a mini bike which they claimed as personal property.

Our review of the record reveals that petitioners did not file a claim with the court within the statutory period. Contrary to the executor's contention, this does not bar the petitioner's alleged objection to the inventory. Filing an inventory with the court is a preliminary investigation to determine probabilities, not ultimate rights. (*In re Estate of Julian* (1991), 227 Ill. App. 3d 369, 380.) An asset mistakenly inventoried as part of the estate does not become estate property merely by failing to file a claim within the statutory period. (See *In re Estate of Toigo* (1969), 107 Ill. App. 2d 395, 404.) Nevertheless, the issue before the court is whether there was sufficient evidence of mis-

conduct by the executor in filing the inventory that the court's decision not to remove the executor was against the manifest weight of the evidence. Our review of the record reveals that petitioners did not sustain their burden of proving misconduct by the executor, as the record is devoid of evidence indicating that the executor's inventory included property where title was held in persons other than decedent.

## CHILD'S AWARD

■■ Petitioners also object to the manner in which the executor handled the child's award. The executor filed a petition for child's award. (Ill. Rev. Stat. 1989, ch. 110½, par. 15—2.) Thereafter, the guardian of decedent's minor children, Cheryl O'Connor, sought to waive the award because she did not want personal property of the estate sold to provide funds for the child's award. On February 9, 1990, the court entered an award of $14,000 for the two minor children. Petitioners claim that the executor had a fiduciary duty to inform Mrs. O'Connor of her rights concerning the minors and that it breached this duty by failing to contact Mrs. O'Connor to request information concerning the status of the minors prior to decedent's death.

Section 15—2 of the Probate Act, in effect at the time of decedent's death, directed the court to provide to minor children of a decedent "a sum of money as the court deems reasonable *** for the period of 9 months after the death of the decedent in a manner suited to the condition in life of such children and to the condition of the estate." (Ill. Rev. Stat. 1989, ch. 110½, par. 15—2(b).) The Act specified the amount of the award to be no less than $2,000 for each minor child, together with an additional sum not less than $10,000, to be divided equally among the minor children. Ill. Rev. Stat. 1989, ch. 110½, par. 15—2(b).

This court has held that the child's award is a statutory requirement and not a matter for the trial court's discretion. (*In re Estate of Meyers* (1983), 113 Ill. App. 3d 886, 890.) Therefore, the executor's request for a total of $14,000 was proper, as it was the minimum amount required by statute. Accordingly, we find no evidence indicating that the executor mismanaged the estate by complying with the statute and petitioning for a child's award in the minimum amount provided by statute.

## TRUST

■■ On September 14, 1989, petitioners sought to remove the

Harris Bank Barrington as trustee of decedent's trust. Instead, the Harris Bank resigned as trustee on November 10, 1989, because the trust had no assets or income and would not be funded under the pour-over clause of decedent's will. The Harris Bank required an original acceptance before it would turn over the original trust document to a successor. Petitioners contend that the executor attempted to obstruct the transfer of the trust to another bank which "raises doubt as to the efficient administration of the estate."

Petitioners cite no authority for the proposition that a corporate fiduciary should be removed as executor because of its resignation as trustee of an *unfunded trust*. We determine the court's directed finding in this regard was not against the manifest weight of the evidence as there is no evidence in the record indicating misconduct by the executor to the detriment of the estate.

### SALE OF REAL ESTATE

■■ Decedent's residence was appraised at $200,000 and was listed for a sale price of $218,000 on January 2, 1990. In mid-January, the executor rejected an offer of $185,000 and an offer of $187,500 without counteroffers. On April 23, 1990, an offer of $195,000 was made. The executor counteroffered for $198,000. The home sold for $197,000. The real estate broker waived $1,000 of her commission to allow the estate to receive $198,000 for the sale. Petitioners contend that the executor mismanaged the estate by allowing the property to be sold under its appraised value.

The executor filed a petition to approve the sale of the real estate with notice to all interested parties. An order approving the sale was entered on June 8, 1990, without objection. Further, petitioners concede that the home was located near the site of a proposed solid waste landfill which inhibited the marketability of the property. We determine that the trial court's directed finding in this regard was not against the manifest weight of the evidence as there is insufficient evidence that the executor mismanaged the estate in selling decedent's residence.

### INHERITANCE TAX

■■ Petitioners contend that the executor wasted assets of the estate because a penalty of $468.88 was incurred for the late filings of Federal and State inheritance tax. The executor explains the late filings by the difficulty petitioners experienced in gathering the $92,900 needed for taxes. According to the executor, it expected the taxes would be paid from the proceeds of the sale of decedent's home and

from the proceeds of an insurance policy. Petitioners assert that the executor acted improperly by requesting that petitioners gather the $92,900 over an Easter weekend. The record reveals that the executor requested an extension of time to file the return. An extension was eventually granted, and the late penalty was refunded and returned to the estate.

An executor of an estate is responsible for paying inheritance taxes due and owing after distribution under a will. We do not argue with petitioners that these taxes should be paid on time. The executor in *In re Estate of O'Brien* (1988), 166 Ill. App. 3d 285, 288, was removed for failing to claim $75,000 in pension proceeds for the estate and for incurring $35,000 in penalties for the late payments of taxes. However, *O'Brien* did not establish a *per se* rule that an executor should be removed for paying taxes late, especially when there is evidence in the record that the estate was reimbursed. While we do not condone the executor's actions in filing the taxes late, our review of the record reveals that the estate suffered no harm, as the late penalty was reimbursed to the estate.

Finally, petitioners contend that the court erred in failing to find other good cause for removal of the executor. Petitioners contend that the executor should have been removed because the attorney for the executor, Mr. Paul T. Lahti, was hostile to petitioners and was not acting with due care to protect the interests of the beneficiaries, as he allegedly stated in a meeting with petitioners that he was "in it for the money." Petitioners cite no authority indicating that this action constitutes "other good cause" for removal of the executor, nor how Lahti's statement may be imputed to the executor.

■■■ ■ Petitioners may desire a different executor because they do not like the manner in which the Harris Bank Barrington has proceeded in the probate of their father's estate. However, we must honor decedent's intent as gleaned from the terms of his last will and testament. An executor may not be removed merely because the beneficiaries of the will might have handled the estate differently and prefer a different executor. Section 23—2 of the Probate Act specifies the causes for which the court may remove an executor. (Ill. Rev. Stat. 1989, ch. 110½, par. 23—2.) The petitioning party bears the burden of proving a *prima facie* case for removal by presenting evidence of one of these causes and establishing reasonable grounds for removal. (*Lucas*, 71 Ill. 2d at 282.) We agree with the trial court that petitioners failed to sustain their burden of proving a *prima facie* case for removal by failing to provide evidence establishing reasonable

grounds for removal. Accordingly, the judgment of the trial court was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

INGLIS, P.J., and QUETSCH, J., concur.