*In re* ESTATE OF JOEL F. KIRK, Deceased (Cheryl A. Kirk O'Connor, Indiv. and as Guardian of the Estate of Joel F. Kirk II, a Minor, *et al.*, Petitioners-Appellants, v. Harris Bank Barrington, N.A., Respondent-Appellee).

Second District    No. 2—96—1487

Opinion filed November 6, 1997.

Bruce G. Wilkins, of O'Brien, Hanrahan, Fay & Rechenberg, of Woodstock, for appellants.

Paul T. Lahti, of Law Offices of Paul T. Lahti, of Crystal Lake, for appellee.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The petitioners, Cheryl Kirk O'Connor, individually and as guardian of the estate of Joel F. Kirk II, a minor, Lisa Kirk Staver, Lynda Kirk Jones, and Debra Lee Kirk, appeal from the following orders of the circuit court of McHenry County: (1) the October 8, 1996, order denying the petitioners' request to remove Paul Lahti as the attorney representing the estate; (2) the November 21, 1996, order awarding Lahti $26,430 in attorney fees and $536.31 in costs; and (3) the December 4, 1996, order closing the estate and discharging the executor. For the following reasons, we affirm.

At the outset, we note that this is the second occasion that this case has been before this court. See *In re Estate of Kirk*, 242 Ill. App. 3d 68 (1993). As our prior disposition provides an adequate summary of the factual background and procedural posture of this case, we repeat only those facts necessary to the disposition of the instant appeal.

On July 19, 1989, the decedent, Joel F. Kirk, died in the performance of his duties as an airline pilot during the crash landing of United Airlines Flight 232 in Sioux City, Iowa. Kirk was survived by his daughters, Cheryl Kirk O'Connor, Lisa Kirk Staver, and Lynda Kirk Jones, and two children who were minors at the time of his

death, Debra L. Kirk and Joel F. Kirk II (collectively referred to as the heirs). On August 22, 1989, prior to the presentation of the decedent's will for probate, Cheryl O'Connor was appointed guardian of the estate and person of the minor children in the circuit court of Boone County.

The decedent's will nominated the First National Bank and Trust Company of Barrington (now known as Harris Bank Barrington, N.A.) (bank) and Janet Kirk as executors. The bank was also nominated as guardian of the estate of Kirk's minor children. Janet Kirk and the decedent were married and divorced on two separate occasions. Their second marriage was dissolved on July 13, 1988.

On September 11, 1989, the bank filed a petition in the circuit court of McHenry County for probate of will and for letters testamentary. On September 14, 1989, the bank filed a petition in the circuit court of Boone County seeking to remove Cheryl O'Connor as guardian of the estate of the minor children.

On September 26, 1989, the circuit court of McHenry County admitted the decedent's will to probate and appointed the bank as executor. The bank retained attorney Paul Lahti as its representative in the probate proceedings.

On September 10, 1990, the heirs filed a petition in the circuit court of McHenry County seeking removal of the bank as executor. The petition alleged that the bank had engaged in numerous improprieties, including: (1) attempting to remove Cheryl O'Connor as guardian of the estate of Joel Kirk II and Debra Kirk; (2) mismanaging the inventory and distribution of estate property, including the decedent's United States Savings Bonds; (3) mismanaging the sale of the decedent's residence; and (4) incurring penalties as a result of the late filing and payment of the federal and state inheritance tax. The heirs contended that the bank had failed to properly discharge its duties and had wasted and mismanaged the estate's assets.

The trial court denied the heirs' petition, finding that the bank's management of the estate had been appropriate. On appeal, we affirmed the trial court's ruling, holding that the heirs had failed to present sufficient evidence warranting the removal of the bank as executor of the estate. See *Estate of Kirk*, 242 Ill. App. 3d at 79-80. In so holding, we noted that the bank had not acted improperly in attempting to remove Cheryl O'Connor as guardian of the estate of the minor children, as it had done so pursuant to its nomination in the decedent's will to act in this capacity. *Estate of Kirk*, 242 Ill. App. 3d at 75. We also held that the estate suffered no harm as a result of the manner in which the bank sold the decedent's residence, distributed

the savings bonds, or paid the inheritance tax. *Estate of Kirk*, 242 Ill. App. 3d at 75-76, 79.

On April 22, 1993, following the issuance of our mandate, the heirs filed a petition seeking to remove Lahti as the attorney representing the estate. The heirs alleged that Lahti breached his fiduciary duty to protect the estate and the interests of the heirs in the following ways: (1) by filing false pleadings on behalf of the estate; (2) by soliciting the heirs as clients even though they were already represented by another attorney; (3) by preparing and filing a petition to remove Cheryl O'Connor as guardian of the estate of the minor children; (4) by taking the decedent's savings bonds from Cheryl O'Connor; (5) by failing to pay the federal and state inheritance taxes on time; and (6) by attempting to collect attorney fees arising out of the petition to remove Cheryl O'Connor as guardian of the estate of the minor children.

On October 8, 1996, following a hearing, the trial court denied the heirs' petition. The trial court found that the heirs had waived any alleged conflict of interest objection relating to Lahti due to their lack of diligence in seeking to remove him as attorney for the estate. The trial court explained that the alleged conflict had existed from the beginning of the probate case in September 1989, but that the heirs had permitted the case to proceed for $3^1/2$ years prior to filing their petition to remove Lahti. The trial court also found that Lahti's conduct had not harmed the estate, commenting:

> "[A]s attorney for the estate, Attorney Lahti must act with due care and protect the interests of the beneficiaries. *** Although petitioners presented evidence through the testimony of Cheryl Kirk O'Connor that animosity existed between at least one of the beneficiaries and Attorney Lahti, the petitioners failed to present sufficient evidence that Attorney Lahti failed to protect the interests of the beneficiaries or did anything contrary to the best interest[s] of the estate."

On November 21, 1996, over the heirs' objection, the trial court awarded Lahti $26,430 in attorney fees and $536.31 in costs to be paid out of the estate. On December 4, 1996, again over objection, the trial court closed the estate and discharged the bank as executor. Following the denial of their motion to reconsider, the heirs filed a timely notice of appeal.

The heirs' primary contention on appeal is that the trial court erred in denying their petition to remove Lahti as the attorney for the estate. The heirs argue that Lahti's conduct violated his fiduciary duty to protect the estate and the interests of its beneficiaries. The heirs also contend that Lahti's conduct violated the Illinois Rules of Professional Conduct. 134 Ill. 2d R. 1.1 *et seq.*

■ In reviewing a probate court's determination, it is well settled that all reasonable presumptions will be made in favor of the trial court and that the burden is on the appellant to affirmatively show the errors alleged. *In re Estate of Elson*, 120 Ill. App. 3d 649, 656 (1983). The trial court is in a superior position to hear and weigh the evidence and determine the credibility and demeanor of the witnesses. *Elson*, 120 Ill. App. 3d at 655. The reviewing court will therefore not reverse a judgment unless the findings are clearly and palpably contrary to the manifest weight of the evidence. *Elson*, 120 Ill. App. 3d at 655.

■ Although the executor owes a fiduciary duty to the estate and the beneficiaries, the executor must also defend the terms of the will and the best interests of the estate. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 763 (1994). Defending the terms of the will often results in an adversarial relationship between the estate and some other party. *Jewish Hospital*, 261 Ill. App. 3d at 763. Often, the estate's adversary is a beneficiary of the estate who is contesting the will or making a claim against the estate or petitioning to have the executor removed or held liable for the mismanagement of the estate. *Jewish Hospital*, 261 Ill. App. 3d at 763.

An attorney representing an estate must give his first and only allegiance to the estate when such an adversarial situation arises. *Jewish Hospital*, 261 Ill. App. 3d at 763. Even though the beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney cannot be held to have a duty to those beneficiaries, due to this potential adversarial relationship. *Jewish Hospital*, 261 Ill. App. 3d at 763. Therefore, while the attorney for the executor owes a fiduciary duty to act with due care to protect the interests of the beneficiaries, the attorney does not have an attorney-client relationship with the beneficiaries. *In re Estate of Halas,* 159 Ill. App. 3d 818, 825 (1987). With these principles in mind, we will address each of the heirs' assertions in turn.

## FALSE PLEADINGS

As noted above, on September 11, 1989, the bank filed a petition for probate of the decedent's will and for letters testamentary. In response to this petition, the heirs filed a petition to deny letters of office to the bank. The heirs' petition alleged that the bank had failed to present the decedent's will for probate within the time period required by section 6—3(a) of the Illinois Probate Act of 1975 (Act) (755 ILCS 5/6—3(a) (West 1996)). On September 15, 1989, Lahti filed a response to the heirs' petition on behalf of the bank. In this response, the bank alleged that the delay in filing the decedent's will

had been caused by the heirs' delay in providing certain information necessary for the preparation of the petition. The bank also alleged that the delay had been caused by the dispute over the appointment of the guardian of the estate of the minor children. The heirs argue that such allegations were fabricated by Lahti in an attempt to justify the bank's inaction.

■ As the heirs correctly note, although an attorney has a duty to represent his client zealously, he must do so within the bounds of the law. 134 Ill. 2d R. 1.2(f)(2). The Illinois Rules of Professional Conduct forbid an attorney from knowingly making a false statement of law or fact in his representation of a client. 134 Ill. 2d R. 3.3(a)(4). Additionally, when appearing in a professional capacity before a tribunal, an attorney shall not make "a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false." 134 Ill. 2d R. 3.3(a)(1).

■ Our review of the record reveals that, during the hearing on their petition to remove Lahti, the heirs failed to present any evidence demonstrating that the allegations contained in the bank's response were false. As the sole support for their argument on appeal, the heirs rely on certain testimony elicited during the hearing on their petition to remove the bank as executor. This testimony, however, was not introduced into evidence during the hearing on the heirs' petition to remove Lahti. As this testimony was not before the trial court in making its ruling, we decline to consider it on appeal.

Moreover, it is also apparent that the trial court was not persuaded by the heirs' allegations of false pleading. After conducting a hearing on the heirs' petition to deny letters of office, the trial court expressly found that the bank had demonstrated good cause for its failure to timely present the will as required by section 6—3(a) of the Act (755 ILCS 5/6—3(a) (West 1996)). In so ruling, the trial court obviously determined that the evidence presented conformed to allegations contained in the bank's response.

The heirs also complain of the pleadings contained in the bank's response to the petition to remove executor. Once again, however, our review of the record reveals that the heirs failed to present any evidence at the hearing demonstrating that the allegations contained in this pleading were inaccurate. To the contrary, the testimony elicited at the hearing confirmed the accuracy of the allegations and denials prepared by Lahti on behalf of the bank. Additionally, we note that, in our disposition of the previous appeal filed in this case, we expressly held that this particular pleading was in compliance with Supreme Court Rule 136(a) (134 Ill. 2d R. 136(a)). See *Estate of Kirk*, 242 Ill. App. 3d at 72. In light of these findings and lacking any

other evidence demonstrating that these pleadings contain false allegations, we decline to disturb the trial court's finding as to this issue.

## SOLICITATION OF HEIRS AS CLIENTS

The heirs also argue that Lahti violated the Illinois Rules of Professional Conduct when he attempted to solicit Cheryl O'Connor as a client even though he knew that she was already represented by another attorney. This alleged solicitation occurred on September 8, 1989, during a telephone conversation between Lahti and the decedent's former wife, Janet Kirk. During this conversation, Lahti called Kirk to inquire whether she knew that Cheryl O'Connor had retained attorney Bruce Wilkins to represent her interests in the probate proceedings. Lahti allegedly told Janet Kirk that he did not think that Wilkins would be a good attorney because he was dually employed as a pilot and as an attorney. Lahti allegedly inquired whether Janet Kirk "or anyone close to Cheryl could sway her way of thinking not to use [Wilkins] but to use [Lahti]."

■ As the heirs correctly note, Rule 7.3 of the Illinois Rules of Professional Conduct prohibits a lawyer from directly, or through a representative, soliciting professional employment when a significant motive for doing so is the lawyer's pecuniary gain. 134 Ill. 2d R. 7.3. The heirs fail to explain, however, why a violation of this provision warrants Lahti's removal as the bank's attorney. As noted above, Lahti's duty as the attorney of the executor was to protect the estate and the interests of the beneficiaries. See *Jewish Hospital*, 261 Ill. App. 3d at 763. Even assuming *arguendo* that Lahti's conduct violated the provisions of Rule 7.3, we fail to see how such conduct caused actual harm to the estate or the interests of the beneficiaries, especially in light of the fact that Cheryl O'Connor did not retain Lahti to represent her. Lacking a showing of such harm, we do not believe that the trial court erred in declining to remove Lahti as the attorney on behalf of the estate.

## CONFLICT OF INTEREST

■ The heirs also argue that Lahti should have been removed as the attorney for the estate due to his role in the bank's attempt to remove Cheryl O'Connor as guardian of the estate of the decedent's minor children. As noted above, the decedent's will nominated the bank as guardian of the estate of the minor children and the bank filed the petition to remove Cheryl O'Connor in order to comply with the testator's declared intent. The heirs argue that it was a conflict of interest for Lahti to file this petition when, as attorney for the executor, he was charged with protecting the interests of the beneficiaries.

The heirs argue that Lahti could not protect the interests of Cheryl O'Connor while at the same time he was attempting to remove her as guardian of the estate of her minor siblings. In addition, the heirs object to the fact that Lahti incorporated certain financial documents into the bank's petition that had been provided to him by Cheryl O'Connor just nine days earlier.

An attorney may not undertake employment that constitutes a conflict of interest, no matter how honest his motives or intentions might be. *In re LaPinska*, 72 Ill. 2d 461, 469 (1978). As correctly noted by the trial court, however, a party waives his right to seek the removal of opposing counsel due to a conflict of interest by failing to make a timely objection at trial. *First National Bank v. St. Charles National Bank*, 152 Ill. App. 3d 923, 932-33 (1987). The heirs became aware of this potential conflict of interest at the time Lahti initially filed the petition to remove Cheryl O'Connor in September 1989. Despite this awareness, they permitted the probate case to proceed for $3^1/2$ years until filing their petition to remove Lahti on April 22, 1993. Such an untimely petition results in waiver of the alleged conflict. See *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 440-42 (1993).

Even if the heirs had not waived their objection, however, they would still not prevail. As noted above, although Lahti had a duty to protect the estate and the interests of the beneficiaries, he did not have an attorney client-relationship with the heirs. *Estate of Halas*, 159 Ill. App. 3d at 825. The only client that Lahti represented was the bank as executor of the decedent's estate; the sole obligation of the executor and its attorney was to carry out the instructions provided in the decedent's will. *Jewish Hospital*, 261 Ill. App. 3d at 763. The heirs again fail to explain how Lahti's conduct in preparing the petition to remove was either harmful to the estate or to the beneficiaries' interests under the will. We decline to hold that a conflict of interest arises between an individual heir and the executor's attorney merely because the heir's wishes are contrary to the terms of the decedent's will. See generally *Jewish Hospital*, 261 Ill. App. 3d at 763. Such a conclusion is consistent with our disposition of the previous appeal, wherein we held that the bank's attempt to seek guardianship of the estate of the minor children pursuant to the decedent's will did not constitute grounds for removal of the bank as executor. *Estate of Kirk*, 242 Ill. App. 3d at 75. For all of these reasons, we conclude that the trial court properly disposed of this issue.

### UNITED STATES SAVINGS BONDS

■ The heirs next complain of the manner in which Lahti

distributed the decedent's United States Savings Bonds. In the previous appeal, we considered this issue and determined that Lahti's conduct did not constitute mismanagement of the estate's assets or result in any harm to the estate. *Estate of Kirk*, 242 Ill. App. 3d at 75. Despite the heirs' request, we decline to revisit this determination.

## ATTORNEY FEES

As noted above, on November 21, 1996, the trial court awarded Lahti $26,430 in attorney fees for his work in representing the estate. The heirs object to this award because it includes fees incurred as a result of Lahti's work in preparing and representing the bank in its petition to remove Cheryl O'Connor as guardian of the estate of the minor children, his work in preparing the bank's response to the heirs' petition to deny letters of office, and his work on avoiding payment of the federal and state inheritance tax penalties. The heirs argue these fees were incurred at a time when Lahti had a conflict of interest with the beneficiaries. The heirs also argue that Lahti's work on these matters was not in furtherance of their interests and was therefore not properly charged to the estate.

It has been stated as a general principle that attorneys may not recover fees after representing adverse, conflicting, and antagonistic interests in the litigation. *Estate of Halas*, 159 Ill. App. 3d at 831. However, the determination as to whether fees should be disallowed is a matter within the discretion of the probate court. *In re Estate of Klappa*, 18 Ill. App. 2d 501, 506 (1958). The findings and judgment of the trial court will not be disturbed if there is any evidence in the record to support the findings. *Estate of Halas*, 159 Ill. App. 3d at 831. The factors to be considered in determining the reasonableness of fees include: good faith; diligence; time expended; the size of the estate; the skills and qualifications of counsel; and the novelty and complexity of the issues confronted. *Estate of Halas*, 159 Ill. App. 3d at 832.

As discussed above, the heirs have failed to indicate why Lahti's work on these matters was in conflict with his duty to protect the estate. We fail to see how the estate was harmed by the bank's petition to remove Cheryl O'Connor as guardian of the estate of the minor children or the bank's decision to contest the heirs' petition to deny letters of office; by taking these actions, the bank was fulfilling its obligation to carry out the decedent's intent as expressed in his will. Additionally, we note that in the previous appeal we expressly held that the estate had not been harmed by the manner in which the bank handled the federal and state inheritance taxes. *Estate of Kirk*, 242 Ill. App. 3d at 79.

Lacking such evidence, we decline to disturb the trial court's determination as to the appropriate attorney fees. See *Szymakowski v. Szymakowski*, 185 Ill. App. 3d 746, 750-51 (1989). Lahti's expert witness, Jim Hecht, testified that the probate litigation had been lengthy and complex and that, in light of the size of the estate, Lahti's fees were reasonable. Our review of the record leads us to the same conclusion. The record reveals that the trial court carefully scrutinized Lahti's petition for fees and eliminated any request for fees incurred from work not directly benefitting the estate. In light of the deference given to the trial court in awarding attorney fees, we decline to disturb the award.

## OTHER MATTERS

■ The heirs raise additional arguments relating to the payment of the inheritance taxes, the trial court's ruling on their motion to reconsider, and issues relating to "public perception." These arguments raise many of the issues already addressed above or in the prior appeal. To the extent that these arguments raise additional issues, they are insufficiently presented to warrant our consideration on appeal. A reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987). A reviewing court will not become an advocate for, as well as the judge of, points the appellant seeks to raise. *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991).

The heirs have barely articulated, much less properly supported, the additional allegations of error contained in the final three sections of their appellate brief. No relevant authority is cited in support of their legal contentions, nor are we able to decipher the precise allegations of error alleged. Lacking the appropriate guidance to consider these arguments, we conclude that they have been waived pursuant to Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)).

## CONCLUSION

For the foregoing reasons, the judgments of the circuit court of McHenry County are affirmed.

Affirmed.

INGLIS and BOWMAN, JJ., concur.