20 December 1999

NOS. 4-98-0726, 4-99-0265 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of the Estate of      ) Appeal from 

BETTY ANN VAIL, Deceased, ) Circuit Court of

THOMAS R. McMILLEN, ) Macon County 

Petitioner-Appellant, ) No. 93P386

v. (No. 4-98-0726) ) 

FIRST OF AMERICA TRUST COMPANY, n/k/a ) 

NC ILLINOIS TRUST COMPANY; RADCLIFFE )

COLLEGE; HARVARD UNIVERSITY; MENNINGER ) 

FOUNDATION; DECATUR MEMORIAL HOSPITAL; )   Honorable

and MILLIKIN UNIVERSITY, )   Warren A. Sappington,

Respondents-Appellees. )   Judge Presiding.

------------------------------------

In the Matter of the Estate of      )   Appeal from 

BETTY ANN VAIL, Deceased, )   Circuit Court of

THOMAS R. McMILLEN, )   Macon County 

Petitioner-Appellant, )   No. 93P386

v. (No. 4-99-0265) ) 

FIRST OF AMERICA TRUST COMPANY, n/k/a ) 

NC ILLINOIS TRUST COMPANY; RADCLIFFE )

COLLEGE; HARVARD UNIVERSITY; MENNINGER ) 

FOUNDATION; DECATUR MEMORIAL HOSPITAL; )   Honorable

and MILLIKIN UNIVERSITY, )   Theodore E. Paine,   

Respondents-Appellees. )   Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

In these consolidated appeals pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), petitioner Thomas R. McMillen appeals from a variety of orders entered in the circuit court of Macon County in the administration of the estate of Betty Ann Vail, deceased.  The orders appealed include in essence the approval of a number of accounts and overruling of the objections thereto.  
Peti­tion­er was one of a number of residuary legatees named in the will of 
Betty Ann Vail, who died on November 2, 1993.
  The executor of the estate is NC Illinois Trust Company (NC), successor of First of America Trust Company.  NC is also the trustee of the two 

inter
 
vivos
 trusts created by Vail.
  Petitioner is not a benefi

ciary of either trust.
  The following beneficiaries of the trusts have also filed appellees' briefs in this case:  Radcliffe College, Menninger Foundation, Decatur Memorial Hospital, and Millikin University.

The issues on appeal are whether (1) the trial court erred in finding that the executor was not required to distribute a substantial portion of the estate within two years of the letters being issued and interest did not accrue from that date; and (2) the order approving the accounts of the executor is against the manifest weight of the evidence because (a) the executor and its wholly owned affiliate benefitted from the investment of funds of the estate, (b) the attorneys for the executor are not entitled to receive any fees from the estate while they are representing the conflicting interests of the trustees, and (c) the executor's account should be audited.  We affirm.  The parties and this court are familiar with the facts of this case.  Only those facts necessary to an understanding of this court's disposition will be discussed.

The estate was opened on November 24, 1993.  
On May 23, 1994, petitioner filed a 
pro
 
se
 contest to the will and trusts, in which other heirs joined.  The trial court dismissed the contests of the will and trusts
, and this court affirmed the dismissal.  
In re Estate of Vail
, 282 Ill. App. 3d 1120, 707 N.E.2d 303 (1996) (unpublished order under Supreme Court Rule 23).  The petition for leave to appeal to the Illinois Supreme Court was denied.  
In re Estate of Vail
, 171 Ill. 2d 566, 677 N.E.2d 965 (1997).
  This court's mandate issued March 21, 1997, and was filed in the circuit court on March 24, 1997.  On September 3, 1997, the executor filed an interim accounting and proposed distribution schedule.  
Petitioner filed exceptions to the first, second, and third current accounts and the interim accounting and proposed distribution, in part demanding interest for the executor's failure to distribute in a timely fashion.

Petitioner argues that "a substantial partial distribu

tion to the residual beneficiaries" should have been made from the estate by November 23, 1995, or, in the alternative, March 21, 1997, the date this court issued its mandate following the first appeal.  As relevant to this case, section 24-10 of the Probate Act of 1975 (Probate Act) authorizes charging the estate representative 10% interest per year on the fair market value of all the personal estate that has come into its possession or control and has not been properly paid out or distributed at the expiration of two years after the issuance of letters of office unless good cause has been shown for the failure to distribute.  755 ILCS 5/24-10 (West 1996).  

In this case, the trial court found there was good cause for the executor's failure to distribute at an earlier time.  In reviewing a probate court's determination, all reasonable presump

tions are made in favor of the trial court, the appellant has the burden to affirmatively show the errors alleged, and the judgment will not be reversed unless the findings are clearly and palpably contrary to the manifest weight of the evidence.  
In re Estate of Kirk
, 292 Ill. App. 3d 914, 919, 686 N.E.2d 1246, 1249 (1997).

Petitioner took the will contest to the Illinois Supreme Court.  Had the will been declared invalid, a distribution under the will would be improper.  If the will and trusts were over

turned, the probate court would have to determine who would be heirs of the intestate estate and the amounts of their distributive shares, in spite of petitioner's contention that the interests of the beneficiaries would not have been less.

Seven months following the issuance of the mandate, the executor filed an interim accounting and distribution schedule.  The interim accounting set the value of the estate at $944,921.04.  Three current accounts had previously been filed.  Petitioner filed exceptions to the three current accounts and the interim accounting and distribution schedule.  The 10% interest issue was the seventh and final issue included in his exceptions.  This further delayed distribution.  Petitioner and other beneficiaries whom petitioner represented filed additional motions.  When Judge John Davis overruled the objections and exceptions and approved the accounts and distribution schedule, petitioner sought to have Judge Davis removed from the case.  When Judge Warren Sappington was assigned, the prior orders were vacated and had to be reconsidered.  All of this was the result of actions taken by petitioner.  The probate court could reasonably find that on this record there were inferences establishing good cause for not distributing assets of the estate earlier. This finding is not contrary to the manifest weight of the evidence.  See 
In re Estate of Lindberg
, 49 Ill. App. 3d 154, 156, 364 N.E.2d 555, 556-57 (1977); 
In re Estate of Kapraun
, 21 Ill. App. 2d 231, 246-48, 157 N.E.2d 700, 707-08 (1959).

According to the first current account filed February 17, 1995, estate assets had been invested in the Parkstone Prime Obligations Money Market Fund since June 6, 1994.  Petitioner acknowledges that the relationship between the executor and the investment company was fully disclosed in the first three current accounts.  The executor has the authority to invest the estate corpus in any form of investment specified in sections 21-1.01 through 21-1.07 of the Probate Act.  755 ILCS  5/21-1 (West 1996).  That includes money market funds.  755 ILCS 5/21-1.07 (West 1994).   At the time this estate was opened, section 21-1.07 of the Probate Act did not expressly prohibit investment in money market funds managed by affiliates of the corporate executor.  Effective August 17, 1995, section 21-1.07 of the Probate Act was amended by Public Act 89-344 (Pub. Act 89-344, §5, eff. August 17, 1995 (1995 Ill. Laws 3570, 3570)) to read as follows:

"Interests in any open-end or closed-end management type investment company or invest

ment trust (hereafter referred to as a 'mutual fund') registered under the Investment Company Act of 1940, the investments of which are not restricted to the investments otherwise autho

rized for representatives in Sections 21-1.01 through 21-1.06 of this Act, including without limitation a mutual fund that receives ser

vices from or pays fees to the representative or its affiliate, provided that the investment in the mutual fund or funds meets the standard of the prudent investor rule for the invest

ment of trust funds.  A representative or its affiliate is not required to reduce or waive its compensation for services provided in connection with the investment and administra

tion of the estate because the representative invests, reinvests, or retains estate assets in a mutual fund for which it or its affiliate provides services and receives compensation, if the total compensation paid by the estate as fees of the representative and mutual fund fees, including any advisory or management fees, is reasonable.  However, a representa

tive may receive fees equal to the amount of those fees that would be paid to any other party under Securities and Exchange Commission Rule 12b-1."  755 ILCS 5/21-1.07 (West 1996).

This amendment authorized investment in mutual funds not restricted to money market funds.

Petitioner is not contending that the return on the investment was inadequate, the management fee was excessive, or that investing in money market funds with management fees should be avoided.  His only complaint is that an affiliated corporation received the management fee, characterizing the transaction as a presumptively fraudulent diversion of funds and a conflict of interest. 

After the effective date of the amendment to section 21-

1.07, the executor's actions in this case were expressly authorized by statute.  At the time the estate in this case came into existence, the Corporate Fiduciary Act (205 ILCS 620/1-1 
et
 
seq
. (West 1992)) regulated corporate fiduciaries administering trusts and estates.  At that time, section 2-8 of the Corporate Fiduciary Act required, to the extent reasonable under existing circum

stances, that estate funds "be prudently invested for the benefi

ciaries at a rate of return commensurate with that available on 
trust
 
quality
 
investments
."  (Emphasis added.)  205 ILCS 620/2-8 (West 1992).  This section then discussed the need for collateralization when funds were temporarily invested in accounts in the corporate fiduciary or "any affiliate of the corporate fiduciary."  205 ILCS 620/2-8 (West 1992).  When this estate was opened, trust funds could be invested in mutual funds, including those for which the trustee or an affiliate acted as advisor or manager and received reasonable remuneration for those services.  760 ILCS 5/5.2 (West 1992).  Therefore, at the time this estate was opened, the Corporate Fiduciary Act authorized investment of estate funds in "trust quality investments," including mutual funds managed by a subsidiary of the corporate fiduciary since such investments were expressly authorized for trust investments by section 5.2 of the Trusts and Trustees Act (760 ILCS 5/5.2 (West 1992)).  Petitioner has cited no case that determined that the investment of estate assets by a corporate executor in an affili

ated mutual fund company was deemed improper. 

Section 27-1 of the Probate Act provides that a represen

tative of an estate is entitled to reasonable compensation. 755 ILCS 5/27-1 (West 1998).  Here, the trial court found the execu

tor's fees reasonable and appropriate and approved them.  This was not an abuse of discretion or contrary to the manifest weight of the evidence.  Petitioner's cited authority does not require a contrary result.

Petitioner believes the estate should not pay any attorney fees due to the conflict of interest arising from the same law firm representing the same corporation as executor and trustee in the will and trust contests.

The fact that a bank is named both executor of a will and trustee does not render the duties of the bank coextensive in each capacity.  
In re Estate of Pirie
, 141 Ill. App. 3d 750, 763-64, 492 N.E.2d 884, 893 (1986).  An attorney cannot represent conflicting interests in the same matter.  Under Rule of Professional Conduct 1.7, conflicts of interest bar the representation of one client if that representation will be directly adverse to another client or materially limit the lawyer's responsibilities to that other client, unless the client consents after disclosure or the lawyer reasonably believes the representation will not be adversely affected.  134 Ill. 2d R. 1.7.  Generally, an attorney may not receive fees after representing adverse, conflicting, and antagonistic interests in the same litigation.  Whether to disallow fees rests in the discretion of the probate court, and that determina

tion will not be disturbed if any evidence in the record supports it.  
In re Estate of Halas
, 159 Ill. App. 3d 818, 831, 512 N.E.2d 1276, 1284 (1987).

The attorney for the estate must act with due care and protect the beneficiaries' interests.  
Halas
, 159 Ill. App. 3d at 825, 512 N.E.2d at 1280.  However, an estate has a duty to defend a will contest and to employ counsel for that purpose.  
In re Estate of Scully
, 79 Ill. App. 2d 368, 371, 223 N.E.2d 735, 737 (1967).  The attorney for the executor does not have an attorney-

client relationship with the beneficiaries and may represent the estate against a challenge by a beneficiary.  When an adversarial situation arises, the attorney for the executor owes allegiance only to the estate.  
Kirk
, 292 Ill. App. 3d at 919,  686 N.E.2d at 1250.  Here, beneficiaries of the will sought to invalidate the trusts.  The executor did not join in that contest, which the probate court and this court later determined to be without merit.  An estate challenge to trusts that incurred attorney fees for meritless litigation would be an improper use and dissipation of estate assets since the beneficiaries could and did present the position attacking the trusts without the involvement of the estate.  See 
In re Estate of Minsky
, 59 Ill. App. 3d 974, 979, 376 N.E.2d 647, 651 (1978) (counsel fees should be rejected when legal services are not in the estate's interests or do not benefit the estate or when the executor involves the estate in unnecessary litigation or pursues an issue at great cost even though reasonable grounds exist for setting aside the will).  

There was no conflict of interest.  The trial court did not commit an abuse of discretion in authorizing the payment of attorney fees in this case.

Finally, petitioner argues the executor's account should be audited.  The executor has a duty to account to the probate court.  755 ILCS 5/24-1 (West 1996).  All interested parties are to be notified of the hearing on the account.  755 ILCS 5/24-2 (West 1996).  "[I]n the absence of fraud, accident[,] or mistake, the account as approved is binding upon all persons to whom the notice was given."  755 ILCS 5/24-2 (West 1996).  The petitioner does not cite article XXIV of the Probate Act, Accounts (755 ILCS 5/24-1 
et
 
seq
. (West 1996)), nor does he cite any authority in support of his position in violation of Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)).

All but two paragraphs of petitioner's argument in his brief challenge the fees of the attorneys.  The probate court's approval of accounts was not against the manifest weight of the evidence.

Last, we note that the executor asserts that the petitioner has thwarted efforts to close the estate and make final distribution and has served notice of his intention to persist in renewing objections previously ruled upon.  The record does suggest petitioner's actions have been detrimental and costly to the other residuary beneficiaries as well as all who take from the estate.  Frivolous proceedings should not be condoned and, if petitioner's actions are frivolous, sanctions are appropriate.

The judgment of the circuit court of Macon County is affirmed.

Affirmed.

COOK, P.J., and MYERSCOUGH, J., concur.